UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHLOE A. DAVIS,

Plaintiff,

v.

CITY OF PROVIDENCE; OFFICER NATHANIEL COLICCI; OFFICER CHARLES VIEIRA; HUGH T. CLEMENTS; and STEVEN M. PARE,

Defendants.

C.A. No. 21-cv-490-JJM-AEM

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Plaintiff Chloe A. Davis filed this suit against the City of Providence, two of its police officers, the former Chief of Police, and the former Commissioner of Public Safety, alleging various constitutional and state-law claims after she was arrested for disorderly conduct at a protest in the City of Providence. All parties have pending motions before the Court: Ms. Davis moves for partial summary judgment (ECF No. 61), Providence Police Officers Charles Vieira and Nathaniel Colicci ("Individual Officers") move for summary judgment (ECF No. 67), and the City of Providence, former Providence Police Chief Hugh Clements, and former Commissioner of Police Steven Paré ("City") move for partial summary judgment (ECF No. 69). Because the Court finds that the Individual Officers had probable cause to arrest Ms. Davis, her claims fail. The Court will expand its reasoning below.

## I. BACKGROUND[1]

On October 21, 2020, in the City of Providence, at the border with the City of Cranston, individuals were protesting. ECF No. 71 ¶ 1. The protest began at a park in Providence and marched south to the border between Providence and Cranston. ECF No. 63 ¶¶ 35, 37-38. Providence Police on the scene observed rocks and bottles being thrown, illegal dirtbikes and ATVs riding up and down the streets doing "burnouts," as well as people blocking the sidewalks preventing people from passing, and people in the road preventing vehicles from traveling back and forth. ECF No. 71 ¶ 2. Officer Vieira "saw an individual throw a large rock at a police cruiser that was occupied by a police officer." *Id.* ¶ 3. As the protest approached Park Avenue, Cranston police engaged with the group. Officer Vieira, who was the Incident Commander on the scene and the supervising and commanding officer of Officer

[1] Ms. Davis did not respond to the City's Statement of Undisputed Facts as LR Civ 56(a)(1) requires. Therefore, under LR Civ 56(a)(3), they are accepted "as true to the extent they are substantiated by the record, do not rest on credibility determinations or legal conclusions, and are not contradicted by the Plaintiff's submissions." *Spur Track Props., LLC v. City of Providence*, C.A. No. 1:24-cv-00010-MSM-PAS, 2026 WL 867214, at *2 (D.R.I. Mar. 30, 2026). Moreover, Defendants object and move to strike many of Ms. Davis' Statements of Undisputed Facts on the grounds that they are not facts per se but argument and opinion, that they misstate and misquote deposition testimony, and that they involve events that are not involved in this lawsuit (including conduct of Cranston police who are not sued here). Ms. Davis argues that she was merely being overly inclusive to set the stage of events. The Court understands Ms. Davis' position but agrees with Defendants that misleading quotations of testimony taken out of context and "facts" that are poorly disguised opinion statements are unhelpful to the Court when it is tasked with resolving competing motions where distinguishing disputed and undisputed material facts is critical. Vigorous advocacy in motion papers is appropriate and appreciated; advocacy in a statement of undisputed facts is not.

Colicci, in Providence requested that more Providence officers respond to the scene to assist Cranston police. ECF No. 63 ¶¶ 44, 65, 70-72, 79.

Sometime in the night, Providence Police formed a skirmish line.[2] ECF No. 71 ¶ 4. The officers on the skirmish line began to march forward, giving numerous types of dispersal orders, including "move back," "leave or you will be arrested," "if you do not move you will be arrested," and "if you do not disperse you will be arrested." *Id.* ¶ 5. Despite numerous dispersal orders over about eight minutes, Ms. Davis, who was part of an amorphous group of people standing on the sidewalk and street, failed to comply with the dispersal orders.[3] *Id.* ¶ 6. After several minutes, Officer Colicci and other officers in the skirmish line then pushed toward the crowd that remained at the scene. *Id.* ¶ 7; ECF No. 63 ¶¶ 142, 144. Along with the rest of the crowd, Ms. Davis started to run away from Officer Colicci, attempting to avoid arrest. ECF No. 71 ¶ 8. Officer Colicci caught up to her, took her to the ground using a foot sweep,[4] arrested her, and charged her with disorderly conduct. *Id.* ¶ 9; ECF No. 63

[2] A police skirmish line is a line of police officers standing close together to control or block the movement of a crowd and maintain order.

[3] Ms. Davis argues that these commands were unclear, inaudible, drowned out by civilians yelling, and vague although she asserts that she heard them and did not intend to follow them.

[4] Ms. Davis does not assert a claim for excessive force.

¶¶ 146-47. Several other people were also arrested. ECF No. 63 ¶ 191. A City prosecutor later dismissed the criminal charges against Ms. Davis. *Id.* ¶ 247.

Ms. Davis filed this suit, alleging First and Fourth Amendment violations, false arrest, and malicious prosecution under the United States and Rhode Island Constitutions and common law.

## II. STANDARD OF REVIEW

A motion for summary judgment requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where a reasonable jury could find for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993).

## III. DISCUSSION

Ms. Davis asserts eight counts against all Defendants: (1) violation of freedom of assembly and speech (First Amendment and Rhode Island Constitution—Counts I and II); (2) unreasonable search and seizure (Fourth Amendment and Rhode Island

Constitution—Counts III and IV); (3) malicious prosecution (Fourth Amendment, Rhode Island Constitution, and state common law—Counts V, VI, VII); and (4) false arrest and false imprisonment (Rhode Island common law—Count VIII). Ms. Davis moves for partial summary judgment on Counts I, III, and VIII against Officers Colicci and Vieira, the City, and Chief Clements and on Count V and VII against Officers Colicci and Vieira. Officers Colicci and Vieira move for summary judgment on all counts. The City moves for partial summary judgment as to Counts I, II, III, IV, VI, and VIII[5] and for summary judgment as to all claims against Chief Clements and Mr. Paré.[6] The Court will address the cross motions on each count in turn.

**A. Counts II, IV, and VI – Rhode Island Constitution Claims**

Ms. Davis' Complaint contains three claims brought under the Rhode Island Constitution: Count Two: Impairment of Freedom of Assembly and Speech in Violation of Article I, § 21 of the Rhode Island Constitution; Count Four: Violation of Right to Freedom from Unreasonable Search and Seizure in Violation of Article I, § 6 of the Rhode Island Constitution; Count Six: Malicious Prosecution in Violation of Article 1, §§ 2, 6, and 7 of the Rhode Island Constitution. All Defendants move for

[5] As for the two malicious prosecution counts (Counts V and VII), the City does not specifically argue for summary judgment on those counts in its motion, but notes in both its briefs that it seeks summary judgment on all counts "to the extent this Court grants summary judgment on behalf of the individual officers." ECF Nos. 69-1 at 27; 76 at 9. The Court will consider the City's position when it decides the Individual Officers' motion.

[6] Ms. Davis did not move for summary judgment against Mr. Paré, but she concedes that he should be dismissed from the case. ECF No. 73 at 19 n.7. As a result, the Court dismisses all claims against him.

summary judgment on these claims because the Rhode Island Constitution does not provide a private cause of action.

The Court agrees. "The Rhode Island Supreme Court has consistently held that state constitutional provisions do not create a private cause of action without legislative action." *Kurland v. City of Providence*, 711 F. Supp. 3d 57, 76 (D.R.I. 2024) (citing cases); *see, e.g.*, *Folan v. State Dep't of Child., Youth, and Families*, 723 A.2d 287, 292 (R.I. 1999) (Article 1, § 2, anti-discrimination clause); *Doe v. Brown Univ.*, 253 A.3d 389, 401 (R.I. 2021) (Article 1, § 2, due process clause); *Felkner v. R. I. Coll.*, 203 A.3d 433, 447 (R.I. 2019) (Article 1, § 21, freedom of speech and right to assemble).

Ms. Davis acknowledges the state of the law but urges the Court to certify a question about this issue to the Rhode Island Supreme Court. Courts can certify a question of law when "there is no controlling precedent in the decisions of the Supreme Court." R.I. Sup. Ct. R. App. Pro. 6. Because the Court reads the state law precedent as settled, certifying a question about it to the Rhode Island Supreme Court would be redundant. As a result, the Court grants all Defendants' Motions for Summary Judgment as to Counts II, IV, and VI and dismisses those claims.

Moving forward, to efficiently organize the Court's analysis, it will begin by addressing the Individual Officers' and Ms. Davis' arguments in support of their motions by remaining count and then will move, if necessary, to the motions concerning her Counts against the City and Colonel Clements under *Monell v. City of New York, Department of Social Service*.

Individual Officers' Motion

**A. Count I – First Amendment**

Ms. Davis alleges that the Individual Officers violated her First Amendment rights to free speech and assembly because they arrested her, preventing her from observing and recording police activity at the protest. She argues that she is entitled to summary judgment on this claim because no reasonable officer could have believed that she was interfering with their duties when she was just watching from the sidewalk, far from the police. The Individual Officers move for summary judgment, arguing that it is undisputed that they did not know she was filming them, did not hinder her ability to exercise her right to film them, did not arrest her to make her stop filming, and that they had probable cause to arrest her for disorderly conduct. They also argue that they are immune under qualified immunity.

The First Amendment to the U.S. Constitution protects "the freedom of speech ... [and] the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462–63 (1987). The Supreme Court has laid out a three-step process for courts to follow in assessing whether a plaintiff's First Amendment right to freedom of speech has been violated. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The Court "must first decide whether [the conduct at issue] is speech protected by the First

Amendment." *Id.* Assuming an affirmative answer to that question, the Court "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* "Finally, [the Court] must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.* When political speech in a public forum is alleged to be restricted, the level of scrutiny that the Court applies depends on whether the restriction was content neutral or content based. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014). "The government's purpose [for the restriction] is the controlling consideration." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Ms. Davis meets the first element. "[A] citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment."[7] *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011). Next, there is no dispute that public streets and sidewalks are "traditional public fora." *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 20 (1st Cir. 2002). To determine the requisite standard, the Court focuses its analysis on whether the Individual Officers' decision to arrest her for disorderly conduct was content neutral or content based. If the former, the restrictions must be "narrowly tailored to serve some substantial governmental interest." *Id.* A restriction is content neutral if the

[7] The Court assumes that Ms. Davis was present to film the police activity but does note that there is no evidence that the Individual Officers knew Ms. Davis was filming their actions that night or that filming was an obvious purpose of her presence at the protest. In fact, the record shows that, in the hours-long protest, Ms. Davis took ninety seconds of video.

government can "'justif[y] [the restriction] without reference to the content of the regulated speech.'" *Rock Against Racism*, 491 U.S. at 791 (quoting *Clark v. Cmty for Creative Non–Violence*, 468 U.S. 288, 293 (1984)). Because there is no dispute that the Individual Officers were not aware when they arrested her that she was present to film their activity, their decision to arrest her was unrelated to her speech so the Court finds that the restrictions here were content neutral.

The final question then becomes whether the restrictions were narrowly tailored to serve a substantial governmental interest. The First Circuit has recognized that a dispersal order can be a narrowly tailored solution to a public safety situation. While "a command that bystanders disperse … would incidentally impact an individual's exercise of the First Amendment right to film[,] [s]uch an order, even when directed at a person who is filming, may be appropriate for legitimate safety reasons." *Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014); *Los Angeles Press Club v. Noem*, 799 F. Supp. 3d 1036, 1064 (C.D. Cal. 2025), *aff'd in part, vacated in part, remanded,* 171 F.4th 1179 (9th Cir. 2026). And although dispersal orders were given to the crowd and, since she was part of the crowd, applied to Ms. Davis as well, she was not arrested for filming or observing or even for failing to disperse. Indeed, the video exhibits confirm that whenever Ms. Davis can be seen moving with the crowd, she is not under arrest or told to stop filming. The video shows that she subsequently blended into the crowd who were obstructing not only the street but also the sidewalks. Though Ms. Davis argues that she was arrested for disorderly conduct when her only crime was standing around and watching the protest, it is undisputed

that she was arrested after running, with others, on the sidewalk as officers advanced. Police believed that the group's presence on the sidewalk obstructed it and so, after catching her as she fled, charged her with violating state law.

Ms. Davis cites *Gericke* and *Los Angeles Press Club* to argue that her First Amendment claim can be decided as a matter of law based on similar facts. The facts of those cases are not similar though. In *Gericke*, the plaintiff filmed a traffic stop, police allowed her to do so without ordering her to stop and police later charged her with wiretapping without probable cause in retaliation for her filming the traffic stop. *Gericke*, 753 F.3d at 6. Here, it is undisputed that the Individual Officers did not know that Ms. Davis filmed them and, when the officers advanced toward the crowd (presumably to interact with it and arrest people), rather than stepping aside and filming the officers performing their duties, she turned and ran with the rest of the crowd. In *LA Press Club*, which has no precedential effect in this circuit, the police used drastic crowd control measures on a crowd of protesters, leading the court to conclude that plaintiff's freedom of speech rights were violated. The court focused on the officer's decision to ramp up the violence; it found that "the presence of some violent individuals among thousands of peaceful protestors, journalists and legal observers does not give Defendants a blank check to employ unrestricted use of crowd control weapons." 799 F. Supp. 3d at 1064. The Individual Officers here did not attack protesters in an unrestricted way using rubber bullets or any other weapons. They moved the crowd that Ms. Davis was a part of using the skirmish line, shouting

multiple verbal commands to leave the area, attempting to disperse the crowd that was obstructing the streets and sidewalks.

"When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious." *Cantwell v. State of Conn.*, 310 U.S. 296, 308 (1940). While Ms. Davis insists she was not part of the protest and focuses solely on her role as a legal observer, and on her desire to film (even though she appears to have found only a minute and a half of the evening's events to be important to record), the reality the police faced that night over the course of hours posed legitimate governmental safety concerns. The dispersal order was narrowly tailored to serve the government's interest in maintaining public safety and security, even if it had the effect of limiting Ms. Davis' desire to record the police. The Court grants the Individual Officers' Motion for Summary Judgment and denies Ms. Davis' Motion on Count I.

**B. Counts III and XIII – Fourth Amendment Unreasonable Seizure and False Arrest**

Ms. Davis argues that she was ordered to disperse without a lawful basis and arrested without probable cause in violation of the Fourth Amendment and common law. Ms. Davis focuses on her presence on the sidewalk, as opposed to being in the street with the protesters, as undisputed evidence that police had no cause to arrest her. She also argues that the Individual Officers' orders to disperse were a seizure under the Fourth Amendment.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. An arrest or seizure is lawful if the officer has "probable cause." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). A police officer has probable cause when, at the time of the arrest, the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "Probable cause requires only a probability that the defendant committed the crime." *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009); *see Hill v. California*, 401 U.S. 797, 804 (1971) ("But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.").

Probable cause is at the root of these motions. "[B]ecause probable cause speaks to the objective reasonableness of an arrest, its absence will *** generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (internal citation omitted). Officer Colicci arrested Ms. Davis and charged her with disorderly conduct for obstructing the sidewalk while she was observing the protest. Ms. Davis argues that a reasonable jury could find that the police had no probable cause to arrest her because, while she was standing on the

sidewalk, she obstructed no one, and the police did not see her committing any of the violence that occurred during the protest.

"In determining whether the officer had probable cause, we must view the circumstances from the perspective of a reasonable person in the position of the officer." *Holder*, 585 F.3d at 504 (citing *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 255 (1st Cir. 1996)). It is undisputed that Officer Colicci was present on the scene of the protest that turned violent. He observed crowds of people, including Ms. Davis, standing in the streets and on the sidewalks who did not follow the officers' verbal commands made in an effort to secure the area, protect the neighborhood, and protect the officers there. Ms. Davis does not dispute that she was present at the protest and was on the sidewalk and did not disperse when ordered. Ms. Davis takes issue with the language of the state statute, but the statute makes it a crime to "intentionally, knowingly, or recklessly: *** (4) [a]lone or with others, obstruct[] a ... street, [or] sidewalk ...." R.I. Gen. Laws § 11-45-1. That said, even a very minor criminal offense, such as this, can provide the basis for an offender's arrest without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

The First Circuit has acknowledged that dispersal orders, even where they had an effect on an individual's rights, are appropriate for legitimate safety reasons. *Gericke*, 753 F.3d at 8. Because there was at least probable cause to arrest her for failing to clear the sidewalk and street in violation of R.I. Gen. Laws § 11-45-1, Ms. Davis cannot sustain a Fourth Amendment seizure or common-law false arrest

claim. Thus, the Court grants the Individual Officers' Motion for Summary Judgment and denies Ms. Davis' motion as to Counts III and VIII.

**C. Counts V and VII – Malicious Prosecution**

Ms. Davis also moves for summary judgment on Counts V and VII, asserting that the Individual Officers maliciously prosecuted her in violation of 42 U.S.C. § 1983 and state common law. The Individual Officers also move for summary judgment, asserting that the existence of probable cause at the time of her arrest defeats both constitutional and common-law malicious prosecution claims.

While the elements of a constitutional and common-law malicious prosecution claim are not identical, they are similar and should be considered together. To establish a claim for malicious prosecution under section 1983, a plaintiff must show that the defendants "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 100-01 (1st Cir. 2013). To establish a malicious prosecution claim under Rhode Island law, a plaintiff must show that defendants "'(1) initiated a criminal proceeding against [her]; (2) with malice; (3) and without probable cause; which (4) terminated in plaintiff's favor.'" *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I. 1987).

Under either standard, if the Individual Officers had probable cause, these claims fail. *See Horton v. Portsmouth Police Dep't*, 22 A.3d 1115, 1123 (R.I. 2011) ("When probable cause exists to initiate a proceeding, a claim of malicious prosecution must fail."). As the Court has stated as to probable cause, it must decide whether the

Individual Officers, "based on the available facts and acting as an ordinarily careful and prudent person, could have reasonably believed" that Ms. Davis violated R.I. Gen. Laws § 11-45-1, prohibiting disorderly conduct. *Johnson v. Palange*, 406 A.2d 360, 364 (R.I. 1979). Because the Court has determined that the Individual Officers had probable cause to arrest Ms. Davis, her malicious prosecution claims fail. The Court grants their Motion for Summary Judgment as to Counts V and VII and denies Ms. Davis' motion on these same claims.

To sum up the outcome of the Individual Officers' Motion for Summary Judgment, the Court grants their motion on all Counts.[8] ECF No. 67. The Court denies Ms. Davis' Motion for Summary Judgment as to these Individual Officers. ECF No. 61.

**The City Defendants' Motion**

Ms. Davis' claims against the City fall under the doctrine established in *Monell v. City of New York, Department of Social Service*, 436 U.S. 658 (1978). *Monell* holds that a municipality may be sued when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "[A] municipality may be liable under § 1983 where a custom or practice is so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or

[8] The Individual Officers also moved for summary judgment based on qualified immunity. Because the Court finds that they had probable cause to arrest Ms. Davis, it need not reach their qualified immunity defense.

constructive knowledge of it yet did nothing to end the practice.'" *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997)). The policy or custom must be the "cause and moving force behind the deprivation of constitutional rights." *Id.* at 24.

As the Court found, the Individual Officers did not violate Ms. Davis' constitutional rights because they had probable cause to arrest her. *Monell* does not authorize a damages award against a city when the individual officer has not "inflicted constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The City was "sued only because they were thought legally responsible for [the Individual Officer's] actions; if the latter inflicted no constitutional injury on [Ms. Davis], it is inconceivable that [the City] could be liable to [her]." *Id.* The First Circuit "follow[s] *Heller*'s clear rule and hold[s] that the City cannot be held liable absent a constitutional violation by its officers." *Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996); *Schubert v. City of Springfield*, 589 F.3d 496, 504 (1st Cir. 2009); *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 151 (1st Cir. 2003).

Following *Heller* and First Circuit precedent, the Court finds that the City is entitled to judgment as a matter of law, and the Court grants its motions as to Counts I, III, V, VII, and VIII.

## IV. CONCLUSION

The Court DENIES Ms. Davis' Motion for Summary Judgment. ECF No. 61. The Court GRANTS the Individual Officer's Motion for Summary Judgment on all Counts. ECF No. 67. The Court GRANTS the City's Motion for Summary Judgment

on all Counts. ECF No. 69. The Court enters judgment for all Defendants against Ms. Davis on all her claims.

IT IS SO ORDERED.

***/s/ John J. McConnell, Jr.***

_______________________________
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

October 15, 2026